### HORAN v. PENNSYLVANIA R. CO.
### THE JOHN J. HORAN.
### THE DETROIT.

No. A–17166.

District Court, E. D. New York.

April 27, 1945.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Burlingham, Veeder, Clark & Hupper, of New York City (William S. Stuhr, Jr., of New York City, of counsel), for Pennsylvania R. Co. and the tug Detroit.

Edward R. Brumley, of New York City (Edmund J. Moore, of New York City, of counsel), for Trustees of New York, New Haven & Hartford R. Co.

BYERS, District Judge.

The question for decision is whether the libelant's scow John J. Horan was struck by the Pennsylvania Railroad's Diesel tug Detroit or by a carfloat being towed by the New Haven steamtug Transfer No. 17 on May 29, 1944, when the scow was lying on the north side of the open pier at Greenville, New Jersey.

The fact of damage to the scow on her starboard side was established.

She had been chartered to the Pennsylvania at the time in question, and her delivery in good condition and her return on June 2, 1944, in damaged condition are not now in question.

The Pennsylvania alleged that while the scow was so under charter to it and on the afternoon of May 29, 1944, it was struck on the starboard side by a carfloat in tow of Transfer No. 17 wherefore it filed an impleading petition against the Trustees of the New York, New Haven and Hartford Railroad Company, to be called the New Haven.

The latter by cross petition denied that its carfloat so struck the scow, and alleged that the damage was actually caused by the Pennsylvania's Diesel tug Detroit, which was proceeding inshore, close to the northerly side of said open pier, between the tow composed of the Transfer No. 17 and her two carfloats which were headed out of the slip, and the scow, so close to the latter as to strike it.

The narrow question of fact which survives the trial is: Which tug did the damage? The testimony yields the following:

### Findings

(1) Ownership of the scow John J. Horan and the incorporation of the other parties and ownership of the respective tugs, and the appointment of the Trustees of the New York, New Haven and Hartford Railroad Company, all as alleged in the pleadings, are found as pleaded.

(2) The John J. Horan is a wooden scow, 113 feet by 33 feet, having an inside depth of 8.9 feet.

(3) On May 29, 1944, at about 2.30 p. m., the said scow was being loaded at the northerly side of the open pier at Greenville, New Jersey, bow in, about 400 feet from the bulkhead and about two or more lengths outshore from the five float bridges at the inshore end of the slip.

There was about 875 feet of water between the said open pier and the mooring rack opposite.

(4) The said scow was then under charter to the Pennsylvania Railroad Company, and its movements were directed and controlled by that Company; the scow-master on board was Matthew Campbell, an employee of the libelant.

(5) At about 2:30 p. m. the New Haven steamtug Transfer No. 17 (the dimensions of which are 112 feet by 26.2 feet with an inside depth of 14 feet, and 1,000 horse-power) proceeded to the float bridges 13 and 14 immediately adjacent to the north side of the said open pier, and took in tow two steel carfloats, Number 68 on the tug's starboard and the other on its port hand.

(6) Both carfloats carried railroad cars; there being twenty on Number 68. The dimensions of that float are 360 feet, 2½ inches, by 40 feet, 2½ inches, with a depth of 11½ feet.

(7) The tug then backed to its starboard hand in about a 90 degree turn, close to the said mooring rack, and then went ahead under a hard left rudder so as to turn the tow sufficiently to port to proceed out of the slip.

(8) The effort was so performed that the tow tended to head toward the mooring rack, in a diagonal direction, and it was necessary for the tug then to make an abrupt change of helm to the starboard to arrest the turn to port.

(9) That starboard turn was not made sufficiently in time to enable the carfloat Number 68 to avoid contact with the scow John J. Horan, and such contact actually took place and caused the damage for which the libel was filed.

(10) At about the time that the Transfer No. 17 was backing out with the two carfloats as stated, the Pennsylvania tug Detroit rounded the open pier and slowly proceeded into the slip for the purpose of enabling the Pennsylvania employee Timo-thy Hayden, on board the tug, to make a pier check; that is, a listing of the vessels lying on the northerly side of the said open pier, for the purpose of record.

(11) The Detroit was barely moving while the said checking was taking place, and at the time that the said carfloat struck the libelant's scow, the Detroit was not less than 300 feet away from the said scow.

(12) The Detroit did not strike the libelant's scow.

(13) Visibility was good at all times herein involved, and neither tide nor wind affected the vessels in question or the maneuvers of Transfer No. 17.

(14) No whistle signals were blown by either tug to the other.

## Conclusions

I. The libelant is entitled to a decree with costs against the Pennsylvania Railroad Company, the respondent, because of its failure to return the scow John J. Horan to its owner in as good condition, etc., under the charter as stated.

II. The Pennsylvania Railroad Company is entitled to a decree against the impleaded Trustees of the New York, New Haven and Hartford Railroad Company, with costs, for the damage caused to the libelant's scow as above stated.

III. The Pennsylvania Railroad Company is entitled to a decree dismissing without costs the cross petition filed by the Trustees of the New York, New Haven and Hartford Railroad Company against the impleaded Pennsylvania Railroad's tug Detroit.

## Comments

The reasons for resolving the testimony in accordance with the Findings may be summarized as follows:

(a) No lookout was posted on carfloat Number 68 as the New Haven tow proceeded out of the slip; the deckhands testified that they were handling the lines during this maneuver and could not function as lookouts. That statement is accepted, but it does not alter the fact that no one was in a position on carfloat Number 68 to warn the Transfer No. 17 of its proximity to the libelant's scow John J. Horan while the described maneuver was being conducted.

(b) The navigator of the Transfer No. 17 could not see the libelant's scow, by reason of the presence of cars on the float, which shut off his view toward the

open pier as the rounding maneuver was under way.

(c) The actual contact was seen by John Fluke, the captain of the Detroit. While he was not a neutral witness, nothing was observed concerning his demeanor or recital, or of Hayden, the Pennsylvania floatman who was making the dock check, to impair the testimony of either.

(d) Campbell, the scowmaster, observed the stern of the starboard carfloat rubbing his boat after the contact, and says that the Detroit was not less than 300 feet away at the time.

(e) Curtain, the captain of the New Haven tug, was told on May 30, 1944, to prepare a report on damage claimed to have been sustained by the scow Horan, which means that the assertion was promptly made for the Horan that the damage was caused by the New Haven tug and not by the Detroit; thus consistency of narrative from the time of the happening to the trial must be attributed to the libelant.

Settle interlocutory decree in accordance with the foregoing.